Mr. Cano never got his day in court. He was deported without a hearing on his claim under the Convention Against Torture, and then his motion to dismiss was denied without an evidentiary hearing. He got a trial, right? He had a bench trial right after that hearing was denied. Correct. It was uncontested. For the elements of the crime, all the government had to prove is that he had, in fact, been the subject of a deportation order, right? Correct. And that was undisputed. And what is your best authority for precisely what the standard is for giving an evidentiary hearing on a motion to dismiss with such a collateral challenge? Let me explain why I'm asking this. When I did criminal defense, motion to dismiss, an indictment, only time I ever saw him, it was entirely on the law. Even if the defendant did what the indictment alleges, it's not the felony named in the indictment. And when I was a district judge, it was the same thing. This is all new to me, the idea of an evidentiary hearing based on a collateral attack on something named in the indictment. So I don't really know exactly when you have evidentiary hearings, what the standard for them is. Sure. Your Honor, so the best case with respect to the evidentiary hearing in general is Mejia. And in that case, this Court said that such a hearing is, and I quote, required if there is a material factual dispute. And that's what we have here. That case dealt with a motion to suppress rather than a motion to dismiss. That's a huge difference. Motion to suppress, you always have evidentiary hearings. Not always. Only when there's an factual dispute. Yeah, but there usually is. The Irwin case, it's cited in my brief, 612 F. 2nd, 1182, the Nizer case from 1980. It's effectively the same standard. And what was held there is that an evidentiary hearing is required if there's a material fact that if resolved, in the favor of the movement, warrants relief. And that was a motion to dismiss. Now, and that was? That was Irwin, did you say? Irwin, I-R-W-I-N. So it's the same standard as that was later applied in Mejia. Genuine issue of material fact? Correct. Exactly. That's exactly correct. On the motion to dismiss, my client was there in the courtroom ready to testify, face perjury or obstruction charges if he testified untruthfully, and yet he was not permitted to speak by the district court. Now, the district court correctly held that his claim under 1326D, turns was the word the court used, on whether his deportation, his underlying deportation, was fundamentally unfair. What was undisputed is that he was eligible for relief under the Convention Against Torture, and that it is at least plausible that he would have gotten relief. The question is whether his waiver of the right to that claim was knowingly involuntary, and more specifically, whether the government had met its burden of proving that the waiver was knowingly involuntary. Let me ask you this. I mean, as I read what happened, and I read the two affidavits we've got from the two asylum officers, I've read Judge Patel's order. Trying to understand what was in Judge Patel's head, as I read what happened, is she's basically saying, I understand what he's going to say. I understand the evidence on the other side, and I don't even need to hear him say it. I don't believe it. Why does she need to let him say it in order to say I don't believe it? Because that's what district courts do. They base their credibility on the judgment. Yeah, but they do summary judgment stuff all the time. That's correct. But where there is what this court has held, at least in the criminal context, the civil summary judgment context may be different. I don't have the civil practice, is that it's required by the district courts to have that kind of hearing. And it's important, and here's why. But in order to discount my client's testimony, my client's proffer testimony, the district judge had to credit the testimony of the immigration agents necessarily. The immigration agents who said, we have no independent regulation of what happened in this case. However, we would never do such a thing. And if you're not going to have- It's not exactly what they said. What they said was our usual practice. It's like testimony that you get all the time in civil cases where somebody says, I don't remember this particular transaction, but our usual practice is we write this form and we put it in that file. I respectfully disagree, Your Honor. I'm going to read from excerpts of Record 87. This is from Agent Ferry. He says, quote, I have never promised or offered an alien voluntary torture or release from ICE custody. I have never offered or promised an alien anything whatsoever in exchange for withdrawing a claim of fear or executing withdrawal of a request for reasonable fear determination. So he's not just saying it's not my normal practice to do so. Yeah, it's even stronger. That's even better for the other side. But it's not. See, you have to credit that. You have to believe that in order to discount my client's testimony. Well, you'd also have to believe it is my normal practice as well. I mean, both of those you'd have to believe. But if it was just my normal practice, then there's actually less of a dispute. In this case, what is outlined and what is underscored is how much of a dispute there is. One person says, my client says, I was there. I know. I was in the interview room. This was what was told to me through the interpreter. And what the other agent says is not just I don't usually do that. I have never, ever done that. You can't have a more distinct factual dispute. Well, yeah, but let me. And we also have Mr. Goodman saying not only I have never told. He says if I did it, I'd likely lose my job. If he got caught. If he got caught. If he got caught. Do you have any evidence at all beyond the testimony that your client wanted to give that asylum officers ever offer voluntary departure in return for withdrawing a fear claim? Well, they can't genuinely offer it because it's actually not statutory eligible. I understand that. Do you have any evidence at all that it's ever been offered even though it would be a fraudulent offer? No, and I would have no way of getting that. But here's what I do have. Is that on the actual waiver form, in this case, it says HQ concurs with caveat. So there's at least some corroboration that there was something unusual about this case. And the two agents said they couldn't remember or the one agent that was related to this form had no idea what that was referring to. But so. Right. And if we're seeking to rely on some sort of presumption of regularity, there is actual corroboration for the claim that something irregular was going on. And so there should have been a hearing. If we don't have hearings in these cases, why do we have district courts? If we're just going to defer to the agent, we don't have to have courts at all. If the agents were for it, especially an agent in this case, I don't remember what happened. There was more to what the agent said, as I recall, and more to what your client said. What it looked like was your client wanted to get out of custody, and he was willing to waive his appeals and go back home in order to get out of custody. Perfectly plausible. That's not what he wrote in his declaration. I understand that may be the theory of the government or the district court, but that's not what he claimed. And he would have faced enhanced charges or at least enhanced sentencing if he were found to have lied under oath. He wouldn't have lied. And why would he give up the claim for no reason? I guess Your Honor is saying so he can get out of custody. To go home. Okay. Or he knew he was going to face persecution. That doesn't make a whole lot of sense. I mean, if I was stuck in some foreign country that I was a tourist in, and as long as I waived all my rights to litigate with them forever and a day, they'd let me go back to Fairbanks, Alaska, and live my life. Great. Sure, but they don't have people in Fairbanks, Alaska, mutilating people for deserting from the Army. There's a good reason why he didn't want to do that. Involuntary departure would have let him go to Mexico instead. That's why he wanted it, and that's what was denied to him. Your Honor, I ask. This is a new point to me. Voluntary departure would have let him go to Mexico instead. Would Mexico have admitted him? It might or might not have, but he could have stopped to stay there. That's the whole benefit. Voluntary departure means you can leave the United States voluntarily. You can go anywhere. He's originally from Guatemala. Correct. And he has his toe cut off in Guatemala. Correct. And you're saying that if he's removed to Guatemala, he can't go to Mexico? He could flee from Guatemala to Mexico, but before he could flee anywhere, he was attacked in his home village. The last time? The most recent time. Correct. And according to him, he doesn't want to go back because he's got nine toes left. They can cut those off, too. He never wanted to go back. Your Honor may know that when you're removed, when you're deported, you are sent to a particular country, they took him to Guatemala, as opposed to voluntary departure where it's just as long as you can leave. It's like the bar at closing time. You don't have to go home, but you can't stay. I got that, yeah. He's got no right to go to Mexico, right? He'd have to sneak into Mexico from Guatemala. And as I understand it, they're tougher on their southern border than we are. Well, none of that's in the record, but he certainly could have. But isn't that true? His voluntary departure would not have been in Mexico because he's not a Mexican? Voluntary departure can go anywhere. You can go anywhere for voluntary departure. As far as we're concerned, he can go anywhere. Correct. But you're telling me that realistically in his head, he was headed for Mexico. Correct. How do you know that? Well, it's not in his declaration, but it was argued before the district court, and so therefore it's in the record for this court. That's the whole point of having voluntary departure, is that he goes somewhere other than Guatemala. Go to somewhere like Mexico. Well, that's not the whole point of voluntary departure. The primary point of voluntary departure is you're not barred from coming back. No, you're still barred from coming back. He was not admissible in the first place. So that was the primary motivation to do that. And it would not have taken long at all to have a hearing, just to let him say his piece. I got that part. Let's hear from the government. We'll give you a chance to respond. All right. Good morning, Your Honor. Susan Gray on behalf of the United States. Did you oppose hearing from him in the district court? I mean, this is an awful lot of time and trouble to save 10 minutes of testimony in the district court. No, Your Honor. The district court turned to the assistant in the courtroom after some argument and said, do I need to have one? And he said, based on this record, no, I don't think you need to. Now, why is that? I mean, it seems to me that the district judge signaled how it was going to come out if she held an evidentiary hearing. And this appellant was going to lose. However, he said one thing, and the government agent said the other thing. And what he said, although it wasn't very plausible, nevertheless, he said it. So why not have the 10-minute hearing? And why isn't the district court obligated to resolve the issue of fact that way? Well, because, Your Honor, the district court had before it not just a declaration and another declaration. The district court had an extensive written record, documents. Oh, that's not the same thing. In a summary judgment, which this seems to be most like, I couldn't find that Irwin case that your adversary cited, but I found one of ours called Zone that seems to be about evidentiary hearings on these sort of collateral challenges. And it seems to say if there's evidence and it doesn't rest on conjecture and there's a prima facie case, and even though the evidence is implausible, why don't you have to hear people testify before you decide you don't believe them? Because demeanor is not the only tool. Cross-examination is another tool, which can be a big help. I mean, the judge could decide, gee, I was all ready to believe the government agent until he testified, and then I decided he was a liar. That's correct, Your Honor. It happens. Absolutely, Your Honor, and I don't dispute that. Our position is, in defending the discretion exercised by the district court here, is that she had before her not only declarations that did, on this specific fact, contradict each other, but that she was. Why isn't it over right there when you have declarations that contradict each other? Because Anderson v. Bessemer tells us, and that's the Supreme Court case, which I cited and Vivenna did as well, tells us that an evidentiary hearing is not the exclusive tool for the district court to determine credibility. And really, that's what's happening here, is, yes, oftentimes there is an evidentiary hearing necessary to determine credibility, but it is not the only tool. Is Anderson a criminal case? Anderson is. And Bessemer? Pardon me, Your Honor. It's not. Sex discrimination. That's correct, Your Honor. I'm sorry. Where is it in Bessemer? It's at 575, Your Honor. The Supreme Court said, Factors other than demeanor and inflection go into a decision whether to believe a witness. Documents or objective evidence may contradict the witness's story. Or, and this is particularly important here for the district court's finding, the story itself may be so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it. And in this instance, the important thing, I think, in looking at the district court's exercise of her discretion is that she was not only looking at the declarations. In evaluating the defendant's story to determine whether it's credible, she had documents which directly contradicted what he was saying on several fronts, on the coercion argument, on the translation argument, and on voluntary departure. Now, the translation directly contradicted? I mean, what do we have on translation? The translation, we have the Ferry Declaration, which basically says, I filled out the information. I followed normal procedures. Yeah, no, but the question really is, how was it translated to him? And we don't have really much evidence at all as to how it was translated to him in Spanish. We have the Ferry Declaration, but then we also have, if the Court will, it have that they were following their normal course of procedures. And there is a presumption that they are following those. But that has nothing to do with what the translator said to him in Spanish. Well, if Bessemer tells us anything, it is that the judges, the district court is entitled to draw inferences from facts. And what the district court had before it was the fact that the LSA translator were professional translators. They were used to dealing with these particular types of terms of art as the district court. Right. The call logs established that this was an orientation interview that took 25 minutes and that all of the normal procedures were followed in the course of that interview. So there is the inference she, I think, correctly drew from those facts before her was that the normal procedures had been followed. I think that's probably right. And I have to say I'm somewhat skeptical of his factual claim that he withdrew his fear request based on a promise that he would get voluntary departure. And were I a fact finder and I heard from all of these people, I think I'd know how I would probably rule. But I'm not sure that's the question. And the question in front of us is whether or not he was entitled actually to provide testimony in front of the district judge. And I guess then to call Agents Ferry and Goodman. Your Honor, I would agree with you that if the defendant had taken the stand, then under the Mejia case, the agents would have needed to take the stand. But Mejia, I think, can be distinguished because in that particular situation it was a situation where Judge Rial had the defendant on the stand and the footnote 9, I believe, of that opinion establishes that he held the demeanor of the defendant against him while not being able to observe the demeanor of the agents. That's not the case here. The district court here made a credibility determination based upon the declarations, but also upon documentary evidence which contradicted the declarations. I still foul up on the first part of your sentence, that the district judge made this factual determination. I looked at that Bessemer case. I'd forgotten it, frankly, when you cited it. And I can't see where it helps you at all, frankly. It was a sex discrimination case. The district judge held a two-day trial. He entered findings of fact. The Fourth Circuit said the findings were clearly erroneous or said that the findings should be reviewed more critically because he had just signed the findings proffered by the successful plaintiff. And the Supreme Court said, no, no, no. He heard the witnesses. He tried the case. It doesn't matter. They still can only be reversed if they're clearly erroneous. And then it says, well, in some cases documents may demonstrate clear error in a finding based on demeanor. But still the standard is clearly erroneous. It seems like it's just totally irrelevant to this case. It's civil and static criminal. And the case went to trial. In this case, we have a decision in the Ninth Circuit that says there's no such thing as a finding of fact on summary judgment. That's a quote. And it seems to me that what you've got here is a finding of fact on summary judgment in effect in a criminal case. Your Honor, I actually continue to believe that Bessemer actually does provide support. I don't see it. Tell me how. I've got it right here. Because the district court or because the Supreme Court said that. Where? Where? I'm looking at it. I am looking at it. I believe it's 575, Your Honor. Okay.  Yeah, it was tried. It went to trial. But the Supreme Court specifically describes the fact that when there is documentary evidence, the district court is relied, is able to rely on that as well in making it credible. Well, of course. If a person testifies, I signed this on February 1, and the document says this document was executed February 2, a district judge may say I find it was signed February 1 or I find it was signed February 2. And if it matters, then a clearly erroneous standard will matter. And it may be that other evidence, documentary evidence in the file will show that the district judge was clearly erroneous in saying February 1 because the documentary evidence is overwhelming for February 2. And in that case, the Supreme Court says the appellate court can still reverse. But I don't understand how it helps you. Your Honor, if I might. Go for it. I think that if you accept defendant's position, which is any time I assert, file a declaration, asserting a fact, no matter how implausible, that as a matter of law, he's entitled to an evidentiary hearing. And I don't think that's the case. I don't think NEA requires that, because here's an example. If in this particular case, Mr. Canegormis's declaration said, Attorney General Eric Holder came into my cell and told me that if I will execute this waiver of a reasonable peer determination, I can be voluntarily deported, something which, by the way, there is no authority for even Eric Holder to allow him to do. Would the district court be required to have an evidentiary hearing? No. What's our – I know you have no authority in motions to dismiss indictments for this. Do you have something in summary judgment? I have one in the 2255 context. That's different, because that's a federalism issue. The Supreme Court has told us we can't hold evidentiary hearings in district court in habeas cases without infringing on the State's authority, and that's why the 2255 doesn't help you much. I'm sorry. I was saying 2254. Your Honor, I'm – You have a federal habeas? Yes. As in State habeas that helps you? Yes. 2255, and that is in United States v. Howard. And I guess the point to be made there, it says that when exactly this time of case where you have an inherently incredible claim, in that case of incompetence, a district court has the discretion to dismiss the petition without a hearing. And the Court specifically said, when the allegations move beyond bald conclusory or incredible assertions, a hearing is required unless the petition files and record conclusively demonstrate that the petitioner was in that case competent. In this instance, it is – I think that you have competing declarations, but in this case, the unless is that there were documents, and I haven't – I see I'm out of time. That's okay. We'll tell you when to quit. Thank you, Your Honor. In this particular instance, the documents in this case establish that what the defendant is claiming simply did not occur. No, no, no, no. They make it possibly unlikely. They don't establish that it did not. At least as to the – I mean, this is not – he's not saying the moon's made out of green cheese. Implausible, then, Your Honor. I apologize. I would say that they – at least as to the coercion argument, they did not occur. And the Court found that looking at the abstract of judgment, the good time credits, the PAYAO report, which firmly establishes that he was taken into – he was in State custody when he was interviewed, that he wasn't taken into custody until the warrant of arrest was issued. Let me – if I can interrupt. I'm floundering here not because I can't understand the practicalities of this. I think we all understand the practicalities of this. I'm floundering here because I don't have any case that tells me exactly what I'm supposed to do in this context. I don't find the civil summary judgment cases directly controlling. I don't find Anderson directly controlling. I don't find Ahabeus directly controlling. Is there any case that tells us what the standard is for holding an evidentiary hearing in the context of this case? Review the vetting in terms of what's the precise procedural setting in which this comes up in this case? Well, Your Honor, I would direct the Court to United States v. Ramirez Garcia, where the Court found that when an alien defendant had failed to produce any evidence and supported his assertions in this type of situation, he did not meet his burden for an evidentiary hearing. And I recognize that the defendant has cited Vera v. INS, which is that the Court is not to hold against an alien defendant his inability to produce documents to support his claim. But I think that's a very different situation from here, where it is not only that the defendant. I'm not sure I have the case in front of me that you just relied on. Could you give me that case name and a citation? It's United States v. Ramirez Garcia and 269F3940. 269F3940-something? You want to buy me too fast? I'm sorry, Your Honor. And that would be 945. 945. Thank you. It's cited at page 36 of my brief. Okay. What more could he produce beyond his statement, that's what they told me? Your Honor, I'm not sure. I don't know what other materials he might have had that he didn't seek to produce. One issue, though, that I think that we haven't covered is the fact of the lack of specificity and clarity and definiteness in this declaration. Again, I go back to the example that if the district court is required to go on and have an evidentiary hearing, it has to be more than simply speculation or what is. And in evaluating that, I'd like you to look at the arguments he made about translation. His initial argument at the initial hearing on this case was there was no translation at all. His argument in his declaration is that it wasn't translated word for word. But in the hearing on this motion, he suggested that maybe it was just a mistranslation by these professional translators. So when the Court was judging his credibility, she was entitled to look at the fact that his story was changing from the court. I have no trouble concluding that he was a liar, that he lied about everything. I mean, it seems perfectly obvious to me. It's just I do have trouble with whether she has to hold an evidentiary hearing to conclude he was a liar. I mean, I can think that, but I could be talked out of it. And that happens at evidentiary hearings sometimes. Your Honor, our position is that it wasn't necessary and that the Ninth Circuit case law, nor the Supreme Court case law, there is no case law requiring that in every single instance when the allegations are implausible that the district court must go ahead and have an evidentiary hearing. And I see I'm way over time. I want to answer any other questions the Court has. No, you just know that you owe us big time. Thank you. We'll give you a couple minutes to respond. Thank you very much, Your Honor. The Court suggested, as sort of this report stated, that this claim was implausible. But you cannot say that it's not specific. I'm going to quote from Executive Record 99. The government just said it was not specific. It says, and I quote, I was told that if I agreed to waive my right to have the hearing, I would be released from immigration custody and granted voluntary departure. You can't be more specific than that. It's based upon his personal knowledge of what was told to him through the interpreter by the agents. He did say it's implausible. The government counsel just said it's not specific. It is obviously specific. Now, assuming that the district judge were to believe him, what happens? What happens is that he, then I think the government or the district court is required to dismiss the indictment. He will serve whatever time he serves. That only goes for a sentence. He remains in immigration custody, and he can then renew his claim under the Convention Against Torture, and if he's able to establish it, he gets to stay in this country. And if not, then he'll be sent back to Guatemala. That's what happens. And lose another one of his toes, maybe. Maybe. Or worse. Or worse. Your Honor, another thing government counsel stated, and I just want to address some of the authority very briefly. I thought I heard government counsel say that if Mr. Kahn was willing to take the stand, then there would need to be an evidentiary hearing. I just want to, and the agents would have had to testify, I just want to direct the court to Excerpts of Record 32 and 33, in which the district court said to me, well, do you want to put him on the stand now? And I said, sure. And the court said, we can take his testimony now. See what he says to say on cross-examination. And I say, that is great. And after a little more colloquy, the court says, well, that's a possibility. I'll see how he fares on cross-examination. And I said, that's fine with me. He was ready to testify. And the limiting function, government counsel said, well, a crate of horrible will have an evidentiary hearing in every case. You won't, because someone faces perjury charges and at least enhancement at their current sentence for obstruction of justice if they're found to lie. So my clients won't lightly take the stand and risk that if they don't have the truth to back them up on what their claim is. We're not going to see this all the time. Just one last point. In the Howard case, this Court actually reversed the district court for not giving it an evidentiary hearing and said the standard was a, quote, low threshold. Judge Meyers, I thought Your Honor's interpretation of Anderson, I assume, is exactly correct. And Ramirez-Cano just says what Howard says, that if it's a specific claim, then you have to have an evidentiary hearing. And in that case, it wasn't specific. It was conclusory and pretty speculative, unlike my case in which it was very specific. Give me the citation to that case, the Howell case. Howell is 231. That's the one I've got in front of me. Okay. Thank you. Thank both of you. The case of United States v. Cano Gomez now submitted for decision.
judges: Hug, Kleinfeld, Fletcher